A‌WERKAMP, B‌ONILLA & G‌ILES, PLC
6891 N. Oracle Rd., Suite 155
Tucson, AZ 85704-4287
(520) 798-5282

Ivelisse Bonilla, SBN 023594
ib@abdilaw.com
Shannon Giles (SBN 018786)
sg@abdilaw.com

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Teri Bankhead,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>Town of Sahuarita,<br><br>　　　　　Defendant. | No.<br><br>**COMPLAINT**<br><br>**(Jury Trial Requested)** |

For her Complaint, Plaintiff, Teri Bankhead, alleges as follows:

**NATURE OF THE CASE**

1. Plaintiff seeks damages for interference with her rights under the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA").

2. Plaintiff also seeks damages for wrongful termination in violation of public policy contrary to the Arizona Employment Protection Act, A.R.S. § 23-1501(3)(c)(ii).

**JURISDICTION AND VENUE**

3. This Court has original subject matter jurisdiction over the Federal claims in this action pursuant to 28 U.S.C. § 1331 because the Federal questions presented by virtue of the fact that Plaintiff is bringing a claim for violations of the FMLA.

4. This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367 because the state law claim is so related to the claim in the action with original jurisdiction that they form part of the same case or controversy.

5. Venue is proper in this District under 28 U.S.C. § 1391(b) and (c) because the causes of action arose and the acts and omissions complained of occurred in this District.

## PARTIES

6. Plaintiff, Teri Bankhead, is, and at all relevant times has been, a resident of Pima County, Arizona.

7. Plaintiff was, at all relevant times, an eligible employee within the definition of the FMLA, 29 U.S.C § 2611(2).

8. Defendant, Town of Sahuarita, employed Ms. Bankhead in Pima County and is an employer within the meaning of the FMLA, 29 U.S.C. § 2611(4)(A).

## STATEMENT OF FACTS

9. The Town of Sahuarita hired Ms. Bankhead in May of 2014, as an Assistant to the Town Manager at the time, Kelly Udall.

10. Ms. Bankhead performed her job well and her supervisor was impressed with her abilities and success. As a result, in 2019, Ms. Bankhead was promoted to the position of Assistant Town Manager with responsibility over several departments.

11. On January 25, 2021, Ms. Bankhead attended a Town Council meeting in the evening. The Town Attorney was also present at the meeting.

12. During the public comments at the meeting, the Town Attorney got out of his chair, approached Ms. Bankhead and squatted down beside her. Although both Ms. Bankhead and the Town Attorney were wearing masks, Ms. Bankhead noticed a strong smell of alcohol on the Town Attorney's breath.

13. After the meeting, the Town Attorney approached Ms. Bankhead, and two other attendees. When the Town Attorney stood next to Ms. Bankhead, she noticed the

```
```
smell of alcohol on his breath again, that he was acting giddy and that he repeated himself three times.

14. Based on her observations of the Town Attorney, Ms. Bankhead reasonably believed that he was under the influence of alcohol while working at a Town Council meeting, that he would be driving home from the meeting impaired by alcohol, and may have driven to the meeting under the influence.

15. As a result, Ms. Bankhead called Mr. Udall, the Town Manager, on her way home, and reported her concerns about what she had observed.

16. The next day, Ms. Bankhead spoke with Mr. Udall and the HR Director, Jessica Silva, regarding her concerns that the Town Attorney had been under the influence of alcohol at the Town Council meeting and that he would be driving under the influence. Mr. Udall told Ms. Bankhead that he would call the Mayor.

17. Ms. Bankhead was told there would be an investigation with respect to the Town Attorney's conduct.

18. Following Ms. Bankhead's report about the Town Attorney and Mr. Udall's call to the Mayor, the Town Council held two executive sessions, one on February 22, 2021, and one on March 1, 2021.

19. Following the executive session on March 1, 2021, the Town Attorney was offered a severance agreement.

20. At the same time, the Town Attorney and HR were discussing the recruitment for the position of Town Attorney.

21. Despite the supposed investigation and the Town Attorney being offered a severance agreement, the Town Attorney controlled the recruitment for his position and was the only person to receive applications for the position. Mr. Udall, the Town Manager, was excluded.

-3-

22. Both Mr. Udall and Ms. Bankhead told the Mayor that proceeding without any checks and balances on the Town Attorney's recruitment for his own position was not a best practice.

23. The Town hired a consultant, LaCoya Shelton, to conduct a workplace investigation.

24. On March 24, 2021, Ms. Shelton told Ms. Bankhead that there were two allegations and that she would be "looping back" with Ms. Bankhead on the second one.

25. On April 28, 2021, the Town Attorney provided a contract for his employment through Educational Services, Inc. (ESI) to the Town Clerk for the Town Council agenda on May 10, 2021. Through that contract, the Town Attorney proposed that the Town of Sahuarita hire him as a contracted employee through ESI to retire and remain in the Town Attorney position. The details of retaining the Town Attorney in this manner were discussed in executive session and not made public.

26. Ms. Silva, Director of HR, was expected to work with A.C. Marriotti, as the Finance Director at the time, and ESI to complete the process of hiring the Town Attorney through ESI administratively.

27. On April 29, 2021, Ms. Bankhead spoke with Ms. Shelton and told her that the Town of Sahuarita was going to essentially re-hire the Town Attorney through ESI rather than continue with recruitment for the position.

28. Ms. Bankhead shared with Ms. Shelton her concern that the Town Council had made these decisions regarding the Town Attorney before the investigation was complete. Ms. Bankhead also told Ms. Shelton that she and the Town Manager had been completely cut out of the discussions regarding recruiting and that it was retaliatory.

29. On May 5, 2021, Ms. Bankhead again spoke with Ms. Shelton. During that conversation, Ms. Shelton told Ms. Bankhead that the Town Council had shaped the scope of the investigation to include an allegation regarding management behavior and that there

was some implication regarding Ms. Bankhead's conduct as a manager. Ms. Bankhead again told Ms. Shelton that she believed this supposed shift in the investigation of the Town Attorney to her and the Town Manager was completely retaliatory.

30. On May 10, 2021, the Town Council approved the contract with the Town Attorney through ESI, maintaining him in the position of Town Attorney, notwithstanding the severance agreement with the Town.

31. When Ms. Shelton briefed Ms. Bankhead about her findings on June 11, 2021, Ms. Shelton told Ms. Bankhead that the second allegation in the investigation had come from the Town Attorney and that the Town Attorney alleged Ms. Bankhead intentionally falsified her allegation from January 25.

32. Ms. Shelton relayed that she had interviewed 23 people over the course of months, however, Ms. Bankhead had not been told during this time that she was the subject of an investigation. Ms. Shelton reported that the allegations against Ms. Bankhead were found to be unsubstantiated but Ms. Shelton refused to give a copy of her report to Ms. Bankhead.

33. Ms. Bankhead felt severe anxiety because it was obvious to her that the Town was supporting the Town Attorney and was now fabricating allegations to get rid of Mr. Udall and her for reporting that the Town Attorney was drinking on the job and driving under the influence.

34. On May 24, 2021, Ms. Bankhead had to take intermittent FMLA due to anxiety and high blood pressure as a result of the hostile work environment she was being subjected to for disclosing violations of the law.

35. In July of 2021, the Town did not renew Mr. Udall's employment agreement and A.C. Marriotti was named Interim Town Manager. Typically, once the Town Manager leaves, the Assistant Town Manager becomes the Interim Town Manager.

36. On August 3, 2021, Mr. Marriotti met with Ms. Bankhead and the HR Director, Jessica Silva. During that meeting, Mr. Marriotti presented Ms. Bankhead with a Separation Agreement and asked her to meet with him the next day regarding her "exit strategy."

37. On August 27, 2021, Mr. Marriotti wrote to Ms. Bankhead terminating her employment effective immediately.

### FIRST CAUSE OF ACTION

### (Interference with FMLA Rights)

38. Defendant took Ms. Bankhead's leave under the FMLA into consideration when it decided not to name her Interim Town Manager and terminated her employment.

39. Ms. Bankhead has a cause of action against Defendant for violation of the FMLA.

40. Defendant interfered with Ms. Bankhead's rights under the FMLA by not naming her Interim Town Manager and terminating her employment for exercising her rights.

41. Defendant's termination of Ms. Bankhead's employment for exercising her rights under the FMLA is unlawful pursuant to 29 U.S.C. § 2615(a)(1).

42. As a result of Defendant's illegal actions, Ms. Bankhead has suffered damages.

### SECOND CAUSE OF ACTION

### (Wrongful Termination in Violation of Public Policy)

43. The Town of Sahuarita refused to name Ms. Bankhead Interim Town Manager and terminated her employment because she reported information and her reasonable belief that the Town Attorney was violating or would violate the law.

44. The Town of Sahuarita's termination of Ms. Bankhead's employment is a wrongful termination in violation of public policy and contrary to A.R.S. § 23-1501(3)(c)(ii).

45. Because Defendants wrongfully terminated her employment, Ms. Bankhead has suffered lost wages and emotional distress and will continue to do so in the future.

## REQUEST FOR JURY

46. Plaintiff requests a trial by jury to the fullest extent permitted by law.

## RELIEF SOUGHT

WHEREFORE, Plaintiff, Teri Bankhead, requests judgment against Defendant awarding her the following:

    (a) Compensatory damages for lost income and emotional distress;

    (b) Back pay pursuant to 29 U.S.C. § 2617(a)(1)(A)(i).

    (c) Front pay;

    (d) Liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii);

    (e) Interest pursuant to 29 U.S.C. § 2617(a)(1)(A)(ii);

    (f) Attorneys' fees and costs incurred in this lawsuit pursuant to 29 U.S.C. § 2617(a)(3); and

    (g) Any other equitable relief this Court deems appropriate and just.

RESPECTFULLY SUBMITTED on December 10, 2021.

                                                            AWERKAMP, BONILLA & GILES, PLC

                                                            By /s/   Shannon Giles
                                                                    Ivelisse Bonilla
                                                                    Shannon Giles
                                                                    *Attorneys for Plaintiff*